BEFORE THE FIRST DIVISION, OCTOBER 16, 1952

**No. 56902.**—S. H. Kress & Co. *v.* United States, protest 99986–K (Seattle).

OLIVER, Chief Judge: The merchandise in the case at bar consists of certain celluloid reindeer (items 23452 and 23454) and celluloid sleds containing a figure of Santa Claus (item No. 23864). The articles were assessed with duty under paragraph 1513, Tariff Act of 1930, at the rate of 1 cent each and 50 per centum ad valorem as toys, composed wholly or in chief value of any product provided for in paragraph 31 of the said act, not having any movable member or part. The plaintiff claims the merchandise properly dutiable under paragraph 31 (b) (2) at the rate of 60 per centum ad valorem as compounds of cellulose (including pyroxylin) "made into finished or partly finished articles of which any of the foregoing is the component material of chief value, not specially provided for."

Counsel for the respective parties at the trial stipulated that the articles under consideration are composed in chief value of compounds of cellulose known as pyroxylin.

The pertinent parts of the tariff paragraphs in question are as follows:

PAR. 1513. * * * toys, composed wholly or in chief value of any product provided for in paragraph 31 * * * not having any movable member or part, 1 cent each and 50 per centum ad valorem.

PAR. 31 (b) (2). All compounds of cellulose * * * including pyroxylin * * * made into finished or partly finished articles of which any of the foregoing is the component material of chief value, not specially provided for, 60 per centum ad valorem.

Plaintiff introduced in evidence certain samples illustrative of the merchandise under consideration (plaintiff's exhibit 1, illustrative exhibit 2, and exhibit 3). Plaintiff's exhibit 1 is a small reindeer, dark brown in color, with an overtone of gray, about 3 inches in height and 2 inches in length. Plaintiff's illustrative exhibit 2 consists of a reindeer, white in color, slightly over 4 inches in height and about 3¾ inches in length. This article also comes in silver and brown. Plaintiff's exhibit 3 consists of a red sled, about 5½ inches in length, measuring about 2¼ inches in width in front and back, containing therein a figure of Santa Claus about 4 inches in height. This article has a small hole on either side of the front of the sled.

The defendant introduced in evidence five reindeer similar to plaintiff's exhibit 1 and illustrative exhibit 2, except that they were of plastic composition (defendant's collective illustrative exhibit A). Three of these articles consist of small reindeer about 3¼ inches in height and approximately 3 inches in length. The other two samples contained in this exhibit consist of a white and a silver reindeer about 4½ inches in height and approximately the same in length.

At the trial, six witnesses testified on behalf of the plaintiff, and two witnesses testified for the defendant.

The witnesses for the plaintiff, the majority of whom were buyers for variety chain stores, such as the plaintiff firm, had been familiar with the use of the articles under consideration for periods from 10 to 25 years and during such time had observed their use for a total of more than five hundred occasions in at least 26 states of the United States. They testified that they had seen such articles used in homes for decorative purposes under Christmas trees; as decorations on mantels; and as table decorations in flower shops, dress and hosiery shop windows, and in department store windows; and also in a serviceman's club as decorations during the holiday season. Plaintiff's witness McIntyre, who had purchased the involved merchandise, testified with respect to plaintiff's exhibit 3 that this sled was used as a decoration under a Christmas tree with reindeer arranged in front of it and that the holes in the sled were for use of shafts by which the reindeer were at times attached to the sled (R. 16). One of the plaintiff's witnesses further testified that the reindeer here in question (plaintiff's exhibit 1 and illustrative exhibit 2) were "accident hazards" to children because of their sharp antlers (R. 44).

The testimony of the defendant's witnesses was directed mainly to the use of articles such as those in defendant's collective illustrative exhibit A, which were not celluloid articles, as are those involved, but which were made of plastic. Their testimony corroborated to a large extent the testimony of the plaintiff's witnesses as to the use of the merchandise before us.

Defendant's first witness stated that he did not sell any celluloid articles and that he had seen very little of the imported merchandise. He testified that the silver-plated reindeer in defendant's collective illustrative exhibit A were sold in specialty shops and "for all kinds of decorations" and that he had seen articles such as these used in homes, being played with by children, and "some used for

decoration purposes" (R. 49, 50). He stated that such articles were "used to a very large extent" in combination with lamps and all kinds of figures (R. 54). The witness further testified that his product was not inflammable but that the celluloid articles such as plaintiff's exhibit 1, illustrative exhibit 2, and exhibit 3 "explode" and that he did not give his children, when younger, anything that was highly inflammable to play with (R. 63). He also testified that the plastic articles which he sold were of stronger construction than the imported articles. This witness was unable to state what was the chief use of the articles contained in defendant's collective illustrative exhibit A. His testimony on this point is summed up in the following statement:

It is very hard for me to answer for the simple reason our production is so very large and we sell to different trades, so we don't know what they do with it (R. 59).

Defendant's second witness testified that he had seen articles like plaintiff's exhibit 1 and illustrative exhibit 2 used in homes and played with by children as toys in farm scenes and in barnyard scenes, in conjunction with other articles; that based upon his personal observation, the chief users of articles like plaintiff's exhibit 1, illustrative exhibit 2, and exhibit 3, and defendant's collective illustrative exhibit A, were children from 3 to 8 years of age, for their amusement (R. 73). That testimony, however, is weakened by the witness' later admission that the reindeer represented by plaintiff's exhibit 1 and illustrative exhibit 2, if played with by children, constituted "a hindrance to have in the house" and might result in serious injury to them, and that he had never seen the sled containing the figure of Santa Claus (exhibit 3) used as a toy. Furthermore, his limited experience with the celluloid articles in question deprives his testimony of substantial weight toward proving chief use of the present merchandise.

Defendant's witness Manheim had never seen celluloid articles like plaintiff's exhibit 1, illustrative exhibit 2, and exhibit 3 used at all, and even as to the merchandise he sold (defendant's collective illustrative exhibit A), the witness admitted that such articles were used to a large extent in combination with lamps and all kinds of figures. He further admitted that he was unable to state what was the chief use of such articles. His further testimony to the effect that the imported celluloid articles were inflammable, and that he would not give children an article of that nature to play with, negatives a finding that such articles were toys chiefly used for the amusement of children.

The classification made by the collector carries with it the presumption that the involved articles are toys. Plaintiff, by the preponderant weight of its testimony, has overcome this presumption attaching to the collector's classification and has made out a *prima facie* case in support of its claim. The record clearly indicates that the witnesses for the plaintiff, by their personal observation over a great many years in hundreds of instances, had a far greater knowledge of the use to which the imported articles were put than what is shown by defendant's proof.

Samples are potent witnesses. (*Marshall Field & Co.* v. *United States*, 20 C. C. P. A. (Customs) 225, T. D. 46037.) An examination of the articles before us tends strongly to support the plaintiff's claim that they are not toys. The imported articles are fragile and hardly of strong enough construction to withstand being played with to any great extent by children. It would appear that they are more properly fitted for and were chiefly used for decorative purposes, as testified to by plaintiff's witnesses.

On the record before us, we find that the imported articles are not toys, as classified by the collector. They are properly dutiable under the provisions in paragraph 31 (b) (2) of the Tariff Act of 1930 at the rate of 60 per centum ad valorem for articles composed in chief value of compounds of cellulose known as pyroxylin, as claimed. The protest is sustained as to the items here in question. Judgment will be rendered accordingly.